**AETNA CASUALTY & SURETY COMPANY, Appellant,**

v.

**PARAMOUNT FIRE INSURANCE COMPANY, Appellee.**

No. 15769.

Court of Civil Appeals of Texas.

Dallas.

April 21, 1961.

Rehearing Denied May 19, 1961.

Johnson, Guthrie & Stanfield, Dallas, for appellant.

Strasburger, Price, Kelton, Miller & Martin and Royal H. Brin, Jr., Dallas, for appellee.

YOUNG, Associate Judge.

Rule 166–A, Texas Rules of Civil Procedure, Summary Judgment. These adversary insurance companies had filed motions for summary judgment; that of paramount being sustained and that of Aetna denied, followed by this appeal.

Background of the proceedings was this: Mr. and Mrs. Sterling D. Holmes, Pauline Reese, and Richardson Savings & Loan Association had sued both insurance companies, the individual plaintiffs being the "purchasers" of house and lot at 3415 Harvard, Highland Park, Dallas, under which contract of sale there had been issued to them a policy of fire insurance with Aetna Casualty & Surety Company. "Sellers" under the contract of sale were Miss Grace Cameron, and the other heirs of R. L. Cameron, deceased, with policy of fire insurance in their own favor issued by Paramount Fire Insurance Company. The described property suffered a fire loss on July 7, 1958. Plaintiffs had alleged a liability on the part of both companies; each defendant filing a cross-action against the other in the suit for determination of respective liabilities. An agreement was reached by all parties on amount of the fire loss, and settlement made with the original plaintiffs by each fire company advancing a sum in proportion to its policy limits without prejudice; the question remaining to be decided, as appellant well states of (1) "whether both insurance companies are liable or only one; and if only one, which one; and (2) the extent of the liability."

The Aetna policy face amount was for $18,000, the Paramount policy for $13,000; the agreed property loss was $14,000; the amount contributed by the two companies being $8,129 and $5,871, respectively. The latter sum was recovered by Paramount in this summary judgment proceedings and Aetna adjudged liable for the entire loss. In turn, Aetna says that Paramount was liable for the entire loss, or at least that the same should have been prorated; in the alternative claiming the existence of fact issues to be determined before a rendition of any final judgment against it. The Cameron-Holmes sale contract was headed "Contract of sale and receipt for earnest money", the purchase price $15,250; ($6,750 cash) $1,200 of which was deposited with "seller" as part payment; and here we quote therefrom: "Balance to be Paid as Follows: (see attached rider) $125.00 payable per month, including interest at the rate of 6% per annum, the first installment to be due and payable on the 17th day of August, 1957 and a like installment due and payable on the 17th day of each succeeding month thereafter until July 17, 1958, when the balance

shall become due and payable. (It has been determined at the present time that it is possible to obtain a ten year $8,500 first mortgage loan on the property, so, on the signing of this contract, it is contemplated that the balance of approximately $5,550 will be paid off by the sale of property located at 1007 Carolina Street, Amarillo, Texas, and that the purchasers herein will negotiate the $8,500 loan and take Deed to the property and deliver first mortgage lien to the permanent lending institution who has offered the $8,500 loan). Taxes and insurance will be prorated as of the date of this contract and should purchasers fail to pay the balance due herein on or before July 17, 1958, then all monies paid hereon shall be forfeited as rents and purchaser will vacate the premises on letter written by the seller to the purchaser addressed to the address of the property. It is hereby agreed and understood that purchaser shall have the right to make all improvements as he wishes on above named property located at 3415 Harvard Avenue."

The contract was dated July 27, 1957 and contained further printed provisions; for example, relative to procurement of title policy, prorating of taxes, insurance, etc; giving both seller and purchaser right of specific performance, and to be consummated by July 17, 1958; purchaser taking possession however at inception of the contract.

It appears from the affidavits, depositions, etc., made a part of motion of Paramount for summary judgment that before the fire occurred, arrangements had been made with National Title & Abstract Company for final closing and transfer of legal title. The Title Company had approved title, agreed to issue title policy, and had prepared closing papers. Appointment had been made for closing on July 8, 1957 at office of Title Company, Richardson Savings & Loan Association had agreed to make a loan of $10,000 on the property and loan papers including first mortgage note and deed of trust had been signed and check of the loan company for $10,000 had been deposited in escrow with the title company. Warranty deed to the property was in process of being signed by the various sellers; when on day before final closing the fire occurred, postponing the closing of sale until September 3, when the transaction was completed with full payment of purchase price to the sellers and delivery of warranty deed to the purchasers. Aetna Casualty has adduced no affidavits of its own in support of its motion for summary judgment.

Points of appeal are now stated; in substance: (1) that Mr. and Mrs. Holmes, in entering into the transaction in question were no more than optionees in taking possession of the Harvard Street property and are not liable for destruction of the home by fire occurring prior to exercise of the option to purchase; therefore no liability on their insurer; and the same result follows entry of possession under a conditional or incomplete contract with no liability for destruction of building by fire until same becomes absolute, hence no liability on insurer; (2) ambiguity of contract, whether one of sale or rental with option to purchase; at any rate where the evidence is conflicting on whether a contract was subject to unfulfilled condition, the court erred in resolving all doubtful questions of fact against appellant and rendering judgment accordingly; (3) error in grant of summary judgment in view of evidence tending to show the Aetna policy was in escrow and had not taken effect on date of fire; (4) as a matter of equity appellant was entitled to have the vendor's insurance in Paramount applied to purchase price of property conveyed; the error resulting from the court's charging Aetna with the entire loss and Paramount with no part thereof; (5) alternatively, Aetna argues that under no circumstances should it be held liable for a greater part of the loss than the face amount of its policy bears to the whole insurance covering the property; in other words, an eighteen thirty-first of $14,000 or $8,129 which it had already paid. (In this connection it must

be noted that the Paramount policy ran solely in favor of named insured, the sellers; they through Miss Grace Cameron having definitely rejected the attachment of a sales contract clause inclusive of the purchasers).

Generally, in answer to the primary point of appellant, the contract of July 1957 constituted under its very terms one of purchase and sale rather than a mere option on part of the purchasers with no obligation or binding effect on them. The date of July 8, had been agreed for closing of *sale*. The purchasers were in possession, down payment made, the monthly installments were current, first lien note executed and money of the loan company placed in escrow. The title policy had issued and in words of Miss Grace Cameron by affidavit "at the time the fire occurred on July 7, 1958, arrangements had already been made for the final closing and an appointment had been made for the parties to meet for such closing at the National Title & Abstract Company on July 8, 1958 and the purchasers had informed us they would complete the formalities at that time"; (Referring, of course, to the balance of the cash consideration).

■ Undoubtedly at time of the fire, purchasers (Holmes and wife), were beneficial and equitable owners of the realty in question; and applicable to such ownership is the principle stated in Northern Texas Realty & Construction Co. v. Lary, Tex.Civ.App., 136 S.W. 843, 845 (writ ref.), as follows: "The rule is that, where loss or injury is occasioned by flood or fire, or other inevitable cause, not arising from the fault of the vendor, occurring between the date of the contract of sale and conveyance, in determining upon whom the loss shall fall, the test is whether the terms of the contract operated to pass the equitable or beneficial ownership to the vendee. * * * So, by the rules, if the contract by its terms operates to pass in praesenti the equitable or beneficial interest to the purchaser, such purchaser cannot

assert the defense of loss of the property, because he was the owner, and must perform the contract."

■ Furthermore, the contract rider provision for forfeiture of monthly installments "as rents" is simply referable to the printed provision of the seller's right to retain all monies paid on purchasers' breach of the contract as alternative to specific performance. In Heath v. Huffhines, Tex. Civ.App., 152 S.W. 176, 177, the principal contention of appellant was that the contract was "but an option"; the court holding differently and stating: "Nor do we think the provision for the forfeiture of the $700 to Heath in event Evans failed to carry out his part of the contract necessarily rendered the contract optional. This in effect constituted but a penalty and was unaccompanied by any agreement on the part of Heath that the sum so to be forfeited should be accepted, * * *." Similarly, in Reiser v. Jennings, Tex.Civ.App., 143 S.W.2d 99, 104 it was held: "The appellant further asserts that we should render judgment for him because the $500 deposit made by the appellee as above stated, with the stipulation that it should be delivered to the appellant as liquidated damages in the event of the default of the appellee, results in a mere option contract and is not a sale. In such stipulation there was no agreement that the appellant should accept such sum in full satisfaction of the breach of the contract nor does such stipulation preclude a suit for specific performance upon the part of the purchaser."

■■ Appellant's argument that the contract was but a rental agreement with option to purchase obviously arises from a provision thereof reciting that "should purchasers fail to pay the balance herein on or before July 17, 1958, then all monies paid hereon shall be forfeited as rents and purchasers will vacate the premises on letter written by the seller * * *." We agree with appellee that if, in view of such wording, the contract was a mere option at its inception, the purchasers had elected

to exercise the option by fixing July 7 as the closing date of purchase, thus converting the instrument into a bilateral contract of sale before the fire. It is well established that exercise of an option relating to realty has such effect. Numerous Texas cases in support include Sinclair Refining Company v. Allbritton, 147 Tex. 468, 218 S.W.2d 185, 8 A.L.R.2d 595. In this connection appellant agrees that a vendee in possession under an *absolute* contract of sale and entitled to specific performance, is the party on whom the loss will fall in case of fire. But it is not required that the contract be fully executed, that is to say, absolute, because when that is done there is no longer a contract of sale, but a "fait accompli" or completed sale and conveyance.

Said contract was clearly not otherwise ambiguous; the expected financing by purchasers through the sale of the Amarillo property not rendering it conditional. Nor was the Aetna policy merely in escrow at time of fire loss, but fully effective from date of issuance of June 25, 1958. Use of the word "escrow" (descriptive of the closing) was of no binding effect; the statement of the purchasers being identical that: "It is our understanding that the policy of insurance issued to us by Aetna Casualty & Surety Company took effect on the date shown on the policy, and no one ever said that it was not to become effective until after the balance of the purchase price had been paid to the Cameron heirs and their deed delivered to us." And as already seen, Aetna produced no affidavits to the contrary.

It will be recalled that following the fire of July 7th, the vendor's policy of fire insurance (Paramount) had been assigned to purchasers; the latter, under a further contract then completing the transaction by full payment of purchase price, the fire loss being settled by interlocutory judgment for plaintiffs, with both insurance companies contributing pro-rata thereto, without prejudice; also that the judgment

appealed from was in favor of Paramount for the amount of its contribution ($5,871.-01); adjudging appellant liable for the entire loss.

In above connection, appellant asserts (Point 8) that: "Even if the Court should hold the contract between the parties were a complete contract of sale, which it is not, that passed the title to vendees in possession before the fire so as to put the loss by fire on the vendees nevertheless even in such circumstances the vendees are entitled *as a matter of equity* to have vendors' insurance in the Paramount Fire Insurance Company applied to the purchase price of the property conveyed and the trial court erred in placing the entire loss on the vendees and their insurer, Aetna, charging insurer of the vendors, Paramount, with no part of the loss, *particularly when vendors assigned all rights under their policy to vendees.*" (Emphasis ours). Said point is countered by defendant as follows: "The burden of the fire loss fell entirely upon the insureds of Aetna, there being no loss at all to the insureds of Paramount, and the only insurance liability here was under the Aetna policy, so that under the law and the undisputed facts, Aetna is not entitled to require any part of its liability to be shared by Paramount, and is not entitled to any proration of the loss."

Holmes, et al., as vendees were admittedly the equitable and beneficial owners of the property at time of the fire, vendors retaining only the legal title. See Northern Texas Realty & Construction Co. v. Lary, supra; and as an incident to such equitable title, the benefits of a vendor's insurance policy is held by it in trust for the vendee in event of fire loss. 55 Amer.Jur. p. 824, § 403; Wm. Skinner & Sons' Ship-Building & Dry-Dock Co. of Baltimore City v. Houghton, 92 Md. 68, 48 A. 85.

There is a divergence of authority in other states on the law question here presented, our Texas Courts not having heretofore passed hereon; appellee's position

being well stated in Tauriello v. Aetna Insurance Co., 14 N.J.Super. 530, 82 A.2d 226, 227 (Syl. 1) that "a contract for insurance against fire is ordinarily one of indemnity under which the insured is entitled to receive indemnity or to be reimbursed for any loss that he may have sustained and cannot recover if he has sustained no loss." And accordingly appellee argues that "where a seller has received his full purchase price, he is in the same position he would have been in if the fire had not occurred and therefore, needs no recovery of insurance proceeds to put him in such position."

 Manifestly, both of these fire companies had an insurable interest in the property involved, that of appellee being to the extent of the unpaid purchase money. But appellee's line of cases fixes the date of closing of the particular deal between the parties as the controlling date; in this instance, September 3, 1958, when, after being assigned the vendor's policy of insurance the purchasers closed the sale by payment of the full contract price; whereas, in our opinion, the rights and liabilities of these insurance companies became fixed on date of the fire loss—a time when the vendors had sustained a direct personal damage to the interest secured; and the fact that the purchasers later paid the full consideration in nowise effected this potential liability. The question of law thus posed has been the subject of extensive annotations in American Law Reports; see 64 A.L.R.2d, 1406, § 4, the text stating the rationale of many jurisdictions that: "Where the purchaser as equitable owner will bear the loss occasioned by a destruction of the property pending completion of the sale, and the contract is silent as to insurance, the rule quite generally followed is that the proceeds of the vendor's insurance policies, even though the purchaser did not contribute to their maintenance, constitute a trust fund for the benefit of the purchaser to be credited on the purchase price of the destroyed property,

the theory being that the vendor is a trustee of the property for the purchaser."

Illustrative of the principle just quoted, and closely analogous in fact to the case at bar, is Vogel v. Northern Assurance Company, 3 Cir., 219 F.2d 409, 410, holding (Syl. 4): "Under Pennsylvania law, realty vendor, who had taken out fire policy, can collect under policy for loss occurring prior to date of settlement, even though vendor has not suffered loss because purchaser later performs under contract of sale." (Syl. 6); "Under Pennsylvania law, where fire loss occurred before conveyance of realty upon which vendor had fire policy, any money recovered by vendor under policy after payment of purchase price would, in equity, have belonged to purchaser, and, therefore, purchaser, to whom vendor assigned his rights under policy after conveyance, had right to maintain action against insurer for amount due under fire claim." This case also holds that rights and liabilities of the parties became fixed on date of the fire loss; also that vendor's insurance company had no right of subrogation. See also Wm. Skinner & Sons' Ship-Building & Dry-Dock Co. of Baltimore City v. Houghton, supra. Thus, in the Vogel case, the vendee, under the circumstances, was entitled to recover on both policies of fire insurance.

Appellee says that the Vogel case is unique in allowing recovery upon both policies, even though the total recovery exceeded the amount of the fire loss; thus enabling Vogel to make a profit from the fire; contrary to general principles of insurance. However, this part of the Federal Court holding has no bearing on the instant situation where no such result is even claimed. Otherwise, says appellee "it is difficult to quarrel with the equity" of the rule stated in § 4, 64 A.L.R.2d p. 1406. Appellee further observes that: "In summary, the rule in § 4, is not applicable to the present case because it is a rule not concerned with the liability of the insurer but rather with the rights of vendor and

purchaser between themselves, arising in cases where the only insurance was that of the vendor and where the proceeds had been paid before consummation of the sale, when there was still a potential loss to the vendor; * * *."

Incidentally the Supreme Court of Pennsylvania, in Insurance Company of North America v. Alberstadt, 383 Pa. 556, 119 A. 2d 83, 86, in an almost identical situation affirmed the liability of both insurance companies on a prorata basis; and holding in such connection: "This determination of rights and obligations is not only in accord with applicable legal principles but accomplishes a just result in that Patterson will recover the amount of the loss actually sustained by him while Alberstadt will receive nothing because in reality she sustained no loss whatever by the fire; the liability of the two insurance companies will properly be limited to the amount of the damage occasioned by the fire, cf. Dunsmore v. Franklin Fire Insurance Co., 299 Pa. 86, 149 A. 163, and they will prorate their respective liabilities therefor in accordance with the terms of their policies."

Somewhat similar in effect is the Texas case of Kost v. Resolute Underwriters of Rhode Island Ins. Co., Tex.Civ.App., 211 S.W.2d 758, where the Galveston Court's holding was adverse to a like contention of the insurance company. There, a mortgagee had insured his own interest in mortaged property. Three Hundred Dollars of the total of $3,000 insurance taken out, only applied to the garage, which was damaged by fire, the mortgagor and owner making the necessary repairs thereto. Just as the vendors in the instant case had assigned their rights under the Paramount policy after the fire, the mortgagee in Kost's appeal assigned his policy rights to the mortgagor, who, after the fire loss and the garage repairs, brought suit under the mortgagee's policy. The insurance company urged, among other defenses, that its assured, the mortgagee, had suffered no loss because the garage had been repaired after the fire; also that if it paid the loss it would be subrogated to the rights of the mortgagee and entitled to recover from the mortgagor; the Appellate Court overruling both of such contentions.

Consistent with above equitable principles, appellant's point 7 should be sustained; in other words, that the summary judgment in favor of Paramount Fire Insurance Company, be set aside and judgment here rendered that it take nothing against Aetna Casualty & Surety Company.

Reversed and rendered.