PARAMOUNT FIRE INSURANCE COMPANY, Petitioner
v.
AETNA CASUALTY & SURETY COMPANY, Respondent

No. A-8459.   Delivered January 31, 1962
Rehearing Denied February 28, 1962
353 S.W. 2d 841

JUSTICES GRIFFIN, WALKER and NORVELL dissent.

*Strasburger, Price, Kelton, Miller & Martin, Royal H. Brin, Jr.,* with above firm, Dallas, for petitioner.

*Johnson, Guthrie & Stanfield,* Dallas, for respondent.

JUSTICE GREENHILL delivered the opinion of the Court.

This case is an appeal from a summary judgment. The question is one of first impression in Texas and involves the liability of two insurance companies, each issuing a policy covering improvements which were destroyed by fire.

On July 17, 1957, the heirs of Mrs. R. L. Cameron entered into a written agreement labeled "Contract of sale and receipt for earnest money", whereby the seller(s) "sells and agrees to convey" and the purchaser(s), Mr. and Mrs. Sterling D. Holmes

and Pauline Reece, "agrees to consummate the sale within fifteen days from date title company approves title" of a tract of land upon which were situated the improvements later destroyed. The contract specified the total purchase price, a down-payment, and terms of $125 monthly until the final closing date one year later, July 17, 1958, when the balance was due. Both seller and purchaser were given the right of specific performance. Purchasers had the right to occupy the premises from the inception of the contract, which they did, and had the right to make all desired improvements on the property.

On October 12, 1957, sellers procured from petitioner, Paramount Fire Insurance Company, an insurance policy for $15,000 covering improvements on the contracted land and payable only to sellers. A clause extending protection to purchasers under this policy was specifically rejected by sellers.

The fire involved occurred on July 7, 1958. By this time, the title company had issued the title insurance policy. The sellers had prepared a warranty deed conveying the property to the purchasers. Some, but not all of the sellers had already signed the deed, and it was being sent to the others for their signatures and acknowledgments. Purchasers had made the monthly payments of $125 and had procured a sufficient loan from Richardson Savings and Loan Association to pay the balance of the purchase price. Purchasers had also procured an $18,000 fire insurance policy from respondent, Aetna Casualty & Surety Company, in their favor with loss payable clause to the mortgagee as its interest might appear. This policy was dated June 25, 1958. All these and related papers, including the Aetna policy, were deposited in escrow with National Title & Abstract Company for final closing of the transaction on July 8, 1958. Because of the July 7 fire, this meeting was postponed until September 3, 1958. At the latter date, purchasers paid the contract price and received the warranty deed. Sellers, at the same time, assigned all their rights and claims under the Paramount policy to the purchasers.

Thereafter, purchasers and their mortgagee filed suit against both insurance companies, claiming property loss of $14,000. This suit was settled as to the plaintiffs by each insurance company's contributing a prorata share of the loss based on the amount of its respective policy, reserving its rights against the other. The suit then proceeded between the two insurance companies to determine liability as against each other. The trial court rendered summary judgment against Aetna, awarding Para-

mount the amount of money it contributed in the settlement with purchasers. Aetna's motion for summary judgment was consequently denied. On appeal, the judgment was reversed and the loss prorated between both companies in proportion to the face amount of the respective policies. 347 S.W. 2d 281.

Both companies filed applications for writ of error to this Court. Paramount, of course, seeks to have the trial court's judgment affirmed. Aetna asks that the full loss be imposed upon Paramount, or, alternatnely, that the judgment of the Court of Civil Appeals be affirmed.

Aetna's contentions require us at the outset to determine the legal nature of the written contract in this case. It concedes that if, as the lower courts have held, this was an absolute contract of sale with the vendees in possession and the vendors entitled to specific performance, then the loss would fall on vendees, at least partially. It is Aetna's position, however, that this contract was only a rental agreement with option to purchase and that the option was not exercised prior to the fire. Therefore, it argues that the loss should be entirely Paramount's. In support of this position, Aetna stresses primarily the contract provision that should vendee "fail to pay the balance due herein on or before July 17, 1958, then all moneys paid hereon shall be *forfeited as rents* and purchaser will vacate the premises on letter written by the seller to the purchaser addressed to the address of the property." (Emphasis supplied.) Aetna also points to the fact that no note, deed of trust, or deed prior to the date of the fire was provided for in the contract; that the authorization of purchasers to make improvements would be surplusage in a sales contract; and that the purchasers sometimes referred to their payments as "rents" for further evidence to support its position.

■ We agree with the courts below that the contract is one of sale and did not create a landlord-tenant relationship. The instrument itself is designated a contract of sale and its language throughout is of sale and purchase. The forfeiture provision quoted above does not alter the nature of the contract, in the absence of a provision that the vendor must accept such sum in full settlement of the buyer's liabilities for default. *Moss & Raley v. Wren,* 102 Texas 567, 113 S.W. 739; *Id.,* 120 S.W. 847; *Redwine v. Hudman,* 104 Texas 21, 133 S.W. 426; *Stevens v. Karr,* 119 Texas 479, 33 S.W. 2d 725; *Texlouana Producing & Refining Co. v. Wall,* Texas Comm. App., 257 S.W. 875; *LaPrelle v. Brown,* Texas Civ. App., 220 S.W. 151 (wr. dism. w.o.j.). There is no such provision here. On the contrary, the vendors

had a right to specific performance of the contract of sale. Aetna being the insurer of purchasers in possession under a contract of sale, it must bear all the loss unless it has a right to require Paramount to bear a prorata share as held by the Court of Civil Appeals.

■ Paramount's application attacks this proration holding, arguing that the vendors suffered no actual pecuniary loss from the fire and that, therefore, the vendees' insurance company should incur the total liability. Paramount's position is based on the generally accepted principle that:

> "Since a contract for insurance against fire ordinarily is a contract of indemnity * * * insured is entitled to receive the sum necessary to indemnify him, or to be put, as far as practicable, in the same condition pecuniarily in which he would have been had there been no fire; that is, he may recover to the extent of his loss occasioned by the fire, but no more, and he cannot recover if he sustained no loss." 45 C.J.S., Insurance, Sec. 915, p. 1010.

Aetna does not challenge this principle. Instead, the controversy is as to whether or not the insureds of Paramount suffered any "loss" in a legal sense.

The Court of Civil Appeals regarded the date of the fire as controlling and found that the vendors did incur a loss, despite the fact that they received the full contract price from the vendees after the fire. There is a line of cases which supports this viewpoint; e.g., *State Mutual Fire Insurance Co. v. Updegraff,* 21 Pa. 513; *Dubin Paper Co. v. Insurance Co. of North America,* 361 Pa. 68, 63 A. 2d 85; *Insurance Co. of North America v. Alberstadt,* 383 Pa. 556, 119 A. 2d 83; *Milwaukee Mechanics Insurance Co. v. Maples,* 37 Ala. App. 74, 66 So. 2d 159; *First National Bank of Highland Park v. Boston Insurance Co.,* 17 Ill. 2d 147, 160 N.E. 2d 802; *Kahn v. American Insurance Co.,* 137 Minn. 16, 162 N.W. 685. See generally 8 A.L.R. 2d 1416, Sec. 6. The rationale of these cases is that an insurance company contracts to protect an insured against destruction by fire of his property and that liability is fixed if such fire occurs, all other contract terms being met. Any compensation to the insured from third parties, such as payment from the vendees here, is regarded as being unrelated to the insurance contract, of no concern to the insurance company, and in the nature of a windfall to the insured.

On the other hand, there is also a line of cases which supports Paramount's argument that its insureds ultimately suffered no pecuniary loss from the fire and are therefore not entitled to recover on their insurance contract. In *Ramsdell v. Insurance Company of North America,* 197 Wis. 136, 221 N.W. 654, it was said:

> "The court looks to the substance of the whole transaction rather than to seek a metaphysical hypothesis upon which to justify a loss that is no loss. This is not a case where a stranger to the transaction, out of charity, or for other reason, might make good the loss. * * * The loss has been made good out of a related transaction. * * *"

Accord, *Tauriello v. Aetna Insurance Co.,* 14 N.J. Super. 530, 82 A. 2d 226; *Smith v. Jim Dandy Markets,* 172 F. 2d 616 (9th Cir.). We are inclined toward this latter view.

The complexity of the present problem is heightened, however, by another widely accepted principle upon which the Court of Civil Appeals relied in ordering a proration between Paramount and Aetna. In 64 A.L.R. 2d 1406, Sec. 4, it is said:

> "Where the purchaser as equitable owner will bear the loss occasioned by a destruction of the property pending completion of the sale, and the contract is silent as to insurance, the rule quite generally followed is that the proceeds of the vendor's insurance policies, even though the purchaser did not contribute to their maintenance, constitute a trust fund for the benefit of the purchaser to be credited on the purchase price of the destroyed property, the theory being that the vendor is a trustee of the property for the purchaser."

The difficulty is that in some jurisdictions, even where the vendor is regarded as having suffered no loss from a fire, he is allowed to collect on his insurance policy subject to a constructive trust for the vendee's benefit. E.g., *Wm. Skinner & Sons' Ship-Building and Dry-Dock Co. v. Houghton,* 92 Md. 68, 48 Atl. 85. Obviously, this result does violence to the indemnity theory of insurance, but as one commentator observed, it represents an attempt by the courts to "accommodate the contract to lay expectation without tarnishing the ideal of freedom of contract". Young, *Some "Windfall Coverages" in Property and Liability Insurance,* 60 Colum. L. Rev. 1063. The rationale is that if a vendee pays the full contract price for property which has been damaged or destroyed by fire, it is only equitable to allow him

the benefit of any insurance proceeds rather than to give the vendor both the insurance proceeds and the proceeds of sale.

Paramount concedes that it is difficult to quarrel with the equity of this rule, but strenuously argues that the rule should have no application when the vendees have secured their own insurance policy. We agree.

Although none of the decisions applying the constructive trust theory purport to base the result on the fact that the vendee had no insurance, yet it appears that such was the situation in all but two cases. The two exceptions are *Vogel v. Northern Assurance Co.*, 219 F. 2d 409 (3rd Cir.), and *Insurance Company of North America v. Alberstadt*, 383 Pa. 556, 119 A. 2d 83. In these cases, the vendee was allowed to benefit from both his and the vendor's policies, even to the extent of being allowed to profit from the fire in the Vogel case. It must be observed, however, that both cases applied Pennsylvania law that an insured's loss is determined as of the date of the fire regardless of any subsequent developments. See *Dubin Paper Co. v. Insurance Company of North America* and *State Mutual Fire Insurance Co. v. Updegraff*, supra.

■ We believe the better result to be that if a vendor is entitled to specific performance under a contract of sale and thereby collects the full purchase price despite fire damage to improvements, he has suffered no legal loss. As it is not before us here, we leave open the question of whether, where the vendee has no insurance, there can be recovery on the vendor's policy subject to a constructive trust for the vendee, who is often ignorant of his legal liability in such a situation. We believe that there is nothing in the present case, however, which would require such an exception to the principle that an insurance policy is basically a personal, indemnity contract.

Here we are not dealing with an unwitting risk bearer, but rather with vendees who are protected by their own insurance. Also, we do not have a situation where the vendors originally intended for their policy to protect the vendees, for they specifically rejected such a provision. Further we note that in the vendors' own policy there is a provision that Paramount's liability should not exceed "the interest of the insured". After the contract of sale, the interest of Paramount's insured became the amount of the unpaid purchase price and, as to that interest, they suffered no loss. Accordingly, there is no liability under

the Paramount policy, and Paramount's insureds had no rights to assign to the vendees.

■ Aetna also makes the contention that the entire loss must fall on Paramount because the Aetna policy was in escrow and had not taken effect at the time of the fire of July 7, 1958. The policy is dated June 25, 1958, and was delivered to the vendees on that date. It is undisputed that the vendees had an insurable interest when the policy was issued, and the fact that all the papers were being held in escrow pending closing of the sale would not render the policy ineffective as between insurer and insureds.

As an alternative point, Aetna urges that the trial court's summary judgment must be reversed to determine, as issues of fact, whether the contract here was one of sale and whether the Aetna policy was in escrow and of no effect. We find no conflict in the facts. The depositions of the witnesses and Paramount's uncontroverted affidavits set out the facts surrounding the transaction from the date of the signing of the contract until the date of closing. The legal nature of the contract was a question of law, as was the effect of Aetna's policy being in escrow.

For the reasons stated herein, the judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion delivered January 31, 1962.

GRIFFIN, JUSTICE, dissenting.

I do not agree that all of the loss from the destruction of the improvements by fire should fall on Aetna. I believe the law requires that the loss be prorated between Aetna and Paramount as decreed by the Court of Civil Appeals.

The majority opinion recognizes that Paramount's insured had an insurable interest in the property at the time of the issuance of that policy. The majority reasons that the liability of Paramount to the insured is to be determined by events happening after the loss by fire has occurred. The majority say "we note that in the vendors' own policy there is a provision that Paramount's liability should not exceed 'the interest of the insured'. After the contract of sale, the interest of Paramount's insured became the amount of the unpaid purchase price and, as to that interest, they suffered no loss." This statement is based

upon the theory that the vendors' debt was paid by the purchaser after the fire.

Such a holding is in direct violation of and contrary to the language of the policy. The policy provides: "Loss on building items shall be payable to ASSURED address_____ as Mortgagee or Trustee, as their *interest may appear at time of loss,* subject to Mortgage Clause (without contribution) printed elsewhere in this policy." (Emphasis mine.) Clearly the loss of the building and the time of the fire are contemporary and simultaneous. The mortgage clause referred to above has no application to our cause. Further, the policy also contained a provision that the liability of the company "shall not exceed the actual cash value of the property *at the time of loss*". (Emphasis mine.) Thus again this clearly fixes the date of the fire as the date on which liability is to be determined.

Let us apply the majority reasoning that Paramount only insured the vendor for the unpaid balance of his purchase price to the fact situation in this cause. Take the date fixed by the policy for determining this interest—which is the "time of loss" —we find that on the date of the loss, which is the date of the fire, the purchaser owed the vendor $12,675.00, plus the contract interest. This figure is computed by subtracting from the total contract price of $15,250.00 the sum of $1,200.00 paid at the time the contract was signed, less eleven monthly payments of $125.00 each totalling $1,375.00. By the terms of the policy contract between the vendor and Paramount, Paramount's liability became fixed to vendor for this sum of $12,675.00. Purchasers hold an assignment from vendor of all his rights against Paramount. Paramount has never paid this liability. Therefore, I maintain that Paramount is still liable on its policy to the assignees of vendor, and its liability is to be prorated in accordance with the terms of the policy.

No public policy is violated; no statute is offended by the parties to the insurance contract making the contract which they did make. Suppose the vendor and purchaser had entered into a contract providing for $5,000.00 cash payment, the balance to be paid in monthly instalments of $125.00 each due on the 10th day of each successive succeeding month. This would require 82 months, or approximately seven years, to pay the deferred payments. Vendor could not be forced to take his balance in one lump sum. He could insist on the monthly payments as set out in the contract in order to earn the interest. Under the majority holding Paramount's liability would not be known until the last

payment had been made. This example illustrates very clearly the fallacy of the reasoning of the majority opinion.

The interests of the vendors and the purchasers were separate and distinct interests. *Appleman, Insurance Law and Practice,* Vol. 5, Sec. 3057 at p. 180, et seq. The assignee of a claim under the policy after a loss stands in the same position as the assignor, *Id.,* Sec. 3462 at p. 643; *Id.,* Vol. 4, Sec. 2181 at p. 53. The vendor, under the contract of sale herein, had an insurable interest in the property destroyed. 24B Texas Jur. 234, Sec. 95. Vendor retained the legal title to the property until the purchase price was paid. 43A Texas Jur. 290, Sec. 253, and authorities there cited.

There is an exhaustive annotation entitled "Rights of vendor and purchaser, as between themselves, in insurance proceeds" in 64 A.L.R. 2d., pp. 1402-1420. Section 4 therein states the general rule to be that "where the purchaser as equitable owner will bear the loss occasioned by a destruction of the property pending completion of the sale, and the contract of sale is silent as to insurance (as our contract here is), * * * the proceeds of the vendor's insurance policies, even though the purchaser did not contribute to their maintenance, constitute a trust fund for the benefit of the purchaser to be credited on the purchase price of the destroyed property, the theory being that the vendor is a trustee of the property for the purchaser." Supporting this rule cases are cited from Alabama, California, Georgia, Iowa, Kentucky, Maryland, Missouri, Nebraska, New Jersey, New York, North Dakota, Ohio, Pennsylvania, South Dakota, Washington and Canada. For this result to be reached, the vendor's policy must be valid as of the date of the fire. We have been cited to no Texas cases in point, nor have we found any in our research.

I would affirm the judgment of the Court of Civil Appeals.

ASSOCIATE JUSTICES WALKER and NORVELL join in this dissent.

Opinion delivered January 31, 1962.