609 P.2d 90

**GRANITE STATE INSURANCE COMPANY aka New Hampshire Insurance Company, Appellant,**

v.

**EMPLOYERS MUTUAL INSURANCE COMPANY, an Iowa Corporation, Appellee.**

No. 1 CA–CIV 3998.

Court of Appeals of Arizona, Division 1, Department A.

Jan. 24, 1980.

Rehearing Denied March 19, 1980.

Review Denied April 1, 1980.

Black, Robertshaw, Frederick, Copple & Wright, P. C. by Steven D. Copple, Phoenix, for appellant.

Julian & McCord by Warren S. McCord, Phoenix, for appellee Emp. Mut. Ins. Co.

## OPINION

DONOFRIO, Judge.

On January 22, 1975, a residential property located in Mesa, Arizona, was partially destroyed by fire. This appeal relates to the respective duties of the two insurance companies that had some form of insurance on the dwelling at the time of the fire. Ed Post Realty, title holder of the dwelling, was dismissed from this appeal by oral stipulation at oral argument.

On October 3, 1973, Ed Post Realty (Post) and Casual Living Homes entered into an agreement to sell to R. E. Schultz and Debi Jo Schultz (Schultzes) a residence located at 2132 East Grandview, Mesa, Arizona. The contract for sale provided that the Schultzes would give a note and mortgage to Post and that no deed would pass to them until the purchase price was paid in full. An addendum to the contract was entered into on October 8, 1973, that provided, *inter alia*, that the Schultzes were to furnish Post with an insurance policy covering the property. Both documents were silent as to who should bear the risk of loss in case of damage to the property.

On November 8, 1973, appellant, Granite State Insurance Company aka New Hampshire Insurance Company, (Granite State) issued a homeowners fire insurance policy to the Schultzes insuring the subject dwelling against fire with an $80,000 limit of liability. The Schultzes were listed as the

named insured and Post was listed in the mortgage clause that provided as follows:

> Mortgage Clause: Subject to the provisions of the mortgage clause attached hereto, loss, if any, on building items, shall be payable to . . . Ed Post Realty.

This policy was for a period of one year, from November 8, 1973, through November 8, 1974.

On November 7, 1974, appellee, Employers Mutual Insurance Company, (Employers) issued a homeowners fire insurance policy to Post insuring the same dwelling against fire with a $65,000 limit of liability. Post was listed as the named insured and First Federal Savings & Loan Association of Phoenix, construction lendor, was listed in the mortgage clause. This policy was for a period of one year, November 7, 1974 through November 7, 1975.

A standard lender's loss payable endorsement was attached to both the Granite State policy and the Employers policy and thereby became a part of the respective contracts.

The residence in question was the subject of a fire on January 22, 1975. At that time the Schultzes were the buyers in possession but behind in the payments due under the mortgage. Repossession proceedings were instituted by Post after the fire but before these declaratory actions were filed. Policy requirements concerning timely filing of proof of loss were complied with but both Granite State and Employers refused to make payments to Post for the structural damage.

It is undisputed that the Employers policy was in full force and effect at the time of the fire and that Employers would clearly have been fully responsible for compensating the parties in the absence of the Granite State policy. Granite State acknowledges for the purposes of this appeal that its coverage was in full force and effect as to Post only. The policy provided that with respect to a designated mortgagee's interest only (Post here), the insurance will continue in force until ten days after written notice of the termination is sent to the mortgagee even if termination is based upon failure to pay the premium. Granite State acknowledges for the purposes of this appeal that it did not give Post the ten-day notice before the fire and therefore, despite the fact that the one-year term of the Granite State policy expired prior to the fire, it was in full force and effect as to Post.

Declaratory actions were filed (and consolidated) by the insurance companies to determine their responsibilities under their policies. The trial court entered a summary judgment in favor of Employers and required Granite State to bear the entire loss on the authority of *Paramount Fire Insurance v. Aetna Casualty & Surety Co.*, 353 S.W.2d 841, 163 Tex. 250 (1962). Granite State paid Post and now seeks reimbursement from Employers.

At the outset we will clarify the status of the various parties. The Schultzes were the buyers in possession under a conditional sales contract and mortgagor as relates to the mortgage with Post. Post retained title to the property and was the named insured under the Employers policy. There is a dispute as to the status of Post under the Granite State policy. Employers contends that Post, mortgagee of the Schultzes, was a mere loss payee while Granite State contends that Post is a mortgagee payee. There is an important difference between the two. 5A J. Appleman, Insurance Law and Practice discusses the various types of payee clauses. A loss payee is defined in § 3335 as:

> [A] mere appointee to receive the proceeds to the extent of his interest . . . dependent upon the existence of an insurable interest in such appointee . . . it makes the policy subject to any act or omission of the insured which might void, terminate, or adversely affect the coverage; and if the policy is not collectible by the insured, the appointee, likewise, cannot recover thereunder.

In contradistinction with a basic loss payee whose rights are totally derivative, a mortgagee payee has an independent agreement with the insurer. Appleman, *Id.*, discusses this in § 3401 as follows:

[A] mortgage loss payable clause is, in effect, an independent agreement with the mortgagee, creating an independent contract between the company and the mortgagee for the latter's benefit. It is definitely true that this result obtains under a union or standard mortgage clause, it being considered that the insurer has entered into a separate contract with the mortgagee just as if the latter had applied for the insurance entirely independently of the mortgagor.

■ In construing the language of the Granite State policy, we hold as a matter of law that Post is a mortgagee payee.

Post is listed on the first page of the policy under the mortgage clause heading which refers to the attached mortgage clause or standard form lender's loss payable endorsement. That endorsement provides coverage for Post as lendor:

The insurance under this policy, . . . as to the interest only of the Lender, . . . shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, . . . by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, . . . or by the happening of any event permitted by them . . . or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance . . . would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property.

The intent is clear. The endorsement is a separate undertaking with Post. The language of this clause contains the express wording of the New York, standard or union mortgage clause which makes Post a mortgagee payee under the Granite State policy.

■ Having defined the legal status of the relevant parties to the insurance policies, we now turn our attention to whether Granite State is entitled to contribution from Employers. The controlling principal is that "In order for there to be contribution among insurers, the interest, as well as the risk and subject matter, must be identical." *Continental Cas. Co. v. Signal Ins. Co.*, 119 Ariz. 234, 236, 580 P.2d 372, 374 (App.1978); quoting *Great West Casualty Company v. Truck Insurance Exchange*, 358 F.2d 883, 886 (10th Cir. 1966). Stated another way, a four-part test must be satisfied before contribution may be required between insurer's providing concurrent coverage, namely: the policies must cover (1) the same parties, (2) in the same interest, (3) in the same property, (4) against the same casualty.

■ We hold that this test is satisfied and contribution is appropriate in the case before us. Both policies insured the residence located at 2132 East Grandview, Mesa, Arizona, against losses by fire, thereby satisfying the sameness of property and sameness of casualty requirements. As previously noted, Post was a named insured under the Employers policy and was mortgage payee under the Granite State policy and therefore is an insured under both policies. This status as insured under both policies satisfies the sameness of parties requirement. The interest of Post was sufficiently the same in both policies. (*See: Goodman v. Quaker City Fire and Marine Insurance Co.*, 254 F.2d 844 (1st Cir. 1958), wherein it was held that a bank (first mortgagee) had the requisite sameness of interest for contribution purposes in two fire policies—one policy it procured and listed it as named insured and a second policy that listed the bank/mortgagee in the loss payable clause.)

Employers argues that there can be no apportionment or contribution because Post did not suffer a loss vis-á-vis the Employers policy. Its theory is that Post had to pay out sums to reconstruct the building after the fire as a direct result of Granite State's refusal to pay the claim and therefore any loss was not a direct loss by fire. Further, it argues that Post suffered no pecuniary loss as a result of the fire because it was successful in collecting from Granite State on its policy.

There are two basic schools of thought relative to when and if a loss occurs—the "New York Rule" and the "Wisconsin Rule." These rules are clearly articulated in *Wolf v. Home Insurance Company*, 100 N.J.Super. 27, 241 A.2d 28 (1968), affirmed 103 N.J.Super. 357, 247 A.2d 345 (1968):

> This rule [New York Rule] is to the effect that in the absence of any contractual agreement to the contrary, a fire insurance policy is a contract of indemnification, the premiums for which are computed according to the value of the property and the risk involved without the knowledge of collateral remedies, so that recovery on the policy will not be denied as long as the insured has a valuable insurable interest at the time of the casualty, even though there is an executory contract for the sale of the real property outstanding which is later consummated. A large majority of the courts in this country that have dealt with the question adhere to the New York rule.

> \*   \*   \*   \*   \*   \*

> This rule [Wisconsin Rule] also regards a contract of fire insurance as a contract of indemnity but it denies recovery to the vendor-insured where the existence of a collateral executory contract for the sale of the real property eventually results in shielding the vendor from sustaining any actual pecuniary loss from the casualty.

Under the New York Rule the rights and responsibilities of the parties to an insurance contract are fixed as of the time of the casualty without reference to subsequent events. In the context of a fire policy, the time of the loss is the time of the fire. The obligation of the insurer to its insured is established at the time of the fire and that obligation is not diminished or affected by the eventual compensation of its insured from another source.

On the other hand, under the Wisconsin Rule the rights and responsibilities are not fixed at the time of casualty. Reference is made to subsequent events to determine if the insured "actually" suffered any pecuniary loss from the casualty. If the insured is eventually compensated from another source, the obligation of the insurer is directly affected and the insurer's obligation is diminished to the extent of such other compensation.

Which rule applies in Arizona is a matter of first impression because there is no case or statute in this jurisdiction dealing directly with the subject. However, Arizona has adopted the common-law by A.R.S. § 1–201 to the extent it is consistent with the laws of this state. To determine the common-law rule on a particular issue we may look to the decisions of our sister states. *Shulansky v. Michaels*, 14 Ariz.App. 402, 484 P.2d 14 (1971). We have looked at both the New York Rule and the Wisconsin Rule and the cases interpreting them and find the New York Rule the better reasoned rule. We hold the New York Rule applicable in this jurisdiction based upon the following considerations.

First, to make claims for casualties that are ostensibly due dependent upon extraneous matters does violence to the express terms of the insurance policy. The plain and ordinary meaning of the language in the respective insurance contracts under consideration here provides for payment to the insured upon the occurrence of specified casualties including losses by fire. The only limitation on this coverage is contained in the apportionment clauses of the policies which provide that losses will be apportioned to the extent of other applicable insurance—not that coverage will be eliminated. Second, by fixing the time of loss at the time of casualty, uncertainty and inconsistency are avoided. Under the Wisconsin Rule there is no fixed standard for deter-

mining when a loss has occurred because subsequent events of unknown nature can "nullify" the loss. This could leave an insured without compensation for an indefinite period of time. Further, under the standard form policy (used by both Employers and Granite State here), the insured is required to give immediate notice to the insurance company of any loss and must file a proof of same within sixty days of such loss. If the time of the casualty is not the time of the loss the insured has no way of determining when he must file proof of loss. It is clear that the words "time of loss" in the notice portion of the policy were intended to refer to the time of the casualty. It would be both contradictory and a *non sequitur* for the word "loss" to have a different meaning in the other provisions of the policy, *i. e.*, whether a loss has occurred to activate coverage. Third, the premiums charged by the insurers are at rates established to reflect the fair equivalent of the obligation assumed by them under the policy without knowledge of the existence of collateral remedies. It is absurd to allow an insurer who has collected a premium for coverage against a certain casualty to have no corresponding obligation to compensate an insured proportionately to that coverage merely because that insured also has coverage against the same casualty with another insurer. Fourth, in that A.R.S. § 20–1503(A) requires that all fire insurance policies covering property in this state conform to all the provisions of the New York standard fire policy, it is logical and consistent to use the New York Rule to determine if and when a loss has occurred under that standard form policy.

The trial court's ruling was based upon *Paramount, supra*, a case decided by the Texas Supreme Court in a jurisdiction that follows the Wisconsin Rule. While the New York Rule is applicable in Arizona, we believe the results in this case would be the same even if we had found *Paramount* and the Wisconsin Rule controlling. In *Para-*

*mount*, the sellers were entitled to specific performance from the buyers under the purchase agreement and were paid in full by them after the fire. This is clearly distinguishable from the facts here where Post was paid by an insurer who had a co-equal obligation to compensate with that of Employers.

Even if the Wisconsin Rule applied in Arizona, payment by another insurer with co-equal obligation is not the type of subsequent event that could eradicate the loss and foreclose the other insurer from seeking contribution under Arizona law. Granite State would not have indemnified Post without recourse because an insurer that properly undertakes the burden of a full settlement does not lose the right to recover from other carriers who are obligated for the same loss. *St. Paul Fire & Marine Ins. Co. v. Allstate Ins. Co.*, 25 Ariz. App. 309, 543 P.2d 147 (1976).

The Granite State policy and the Employers policy each contain an apportionment clause. By inserting these apportionment clauses in their policies the insured expressly envisioned the possibility that more than one insurer would be covering the residence and in such case they determined in advance that losses would be apportioned between them.

We hold that Post suffered a loss under both policies, that the contribution is appropriate and that the loss should be apportioned between Granite State and Employers. The decision of the trial court is reversed and the case is remanded for proceedings not inconsistent with this opinion.

WREN, P. J., and WILLIAM W. NABOURS, Judge *, concur.

* NOTE The Honorable WILLIAM W. NABOURS, Judge of the Superior Court of Yuma County, participated in this decision as authorized by order of the Supreme Court of the State of Arizona filed January 30, 1979.