NO. 07-06-0440-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



NOVEMBER 16, 2006



______________________________




IN RE JEFF NELSON, RELATOR



_______________________________



Before CAMPBELL and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION


 Relator Jeff Nelson, an inmate proceeding pro se, has filed a quarter-page
handwritten note which purports to be an application for writ of habeas corpus. Although
relator provides very limited information, he maintains his sentence is illegal. Therefore,
we will construe his filing as an application for writ of habeas corpus. Having considered
the same, we must dismiss for want of jurisdiction.

 This Court is obligated to determine, sua sponte, its jurisdiction in each case. Welch
v. McDougal, 876 S.W.2d 218, 220 (Tex.App.--Amarillo 1994, writ denied). That
jurisdiction is established by various constitutional and statutory provisions. See, e.g., Tex.
Const. art. 5, § 6; Tex. Gov't Code Ann. § 22.220 (Vernon 2004); Ex Parte Lewis, 663
S.W.2d 153, 154 (Tex.App.--Amarillo 1983, no pet.). 

 Article 11.05 of the Texas Code of Criminal Procedure Annotated (Vernon 2005)
lists the courts which are authorized to issue writs of habeas corpus. Absent from that list
are the courts of appeals. Greenville v. State, 798 S.W.2d 361, 362 (Tex.App.--Beaumont
1990, no pet.). This Court's habeas corpus jurisdiction in criminal matters is appellate only. 
Denby v. State, 627 S.W.2d 435 (Tex.App.--Houston [1st Dist.] 1981, orig. proceeding),
cert. denied, 462 U.S. 1110, 103 S.Ct. 2461, 77 L.Ed.2d 1338 (1983). 

 Consequently, this Court has no original jurisdiction to consider relator's application
for writ of habeas corpus and we must dismiss for want of jurisdiction.

 Patrick A. Pirtle

 Justice



Do not publish.



002, Chain-C, as seller, and Seaboard, as buyer, executed the
document giving rise to the controversy underlying this proceeding. The instrument is 
styled as an "Escrow Contract for Purchase of Real Property" and covered the surface
estate and water rights in and to Sections 375 and 376 in Block 44 of the H & TX Survey
in Hartley County. The contract became effective on March 25, 2002, at which time it was
executed by Seaboard and at which time it deposited with the escrow agent the sum of
$25,000. By contractual provision, Seaboard had a one hundred and thirty day
"investigation period" from March 25, 2002, with an additional twenty days thereafter within
which to close on the purchase. Thus, the initial closing date was August 22, 2002. In the
event the deal was not closed within the one hundred fifty day period, the contract provided
that Seaboard could instruct the escrow agent to forward the $25,000 escrow deposit to
Chain-C and extend the closing date to November 1, 2003. By letter dated August 12,
2002, Seaboard instructed the escrow agent to pay the $25,000 to Chain-C with the
comment that "at this time, Buyer is continuing its efforts with diligence to effectuate closing
of the agreement." Additionally, by letter dated September 15, 2003, Seaboard advised
Chain-C that by copy of the letter it was advising the Escrow Agent "to schedule a pre-closing (at which time the final of all documents will be deposit [sic] with the Escrow Agent)
for October 20, 2003, and the closing (at which time the funds and documents will be
exchanged) for October 30, 2003 or as soon thereafter as is feasible and convenient for
the Escrow Agent and the Seller." However, Seaboard did not elect to close the deal, and,
on November 26, 2003, notified Chain-C of its decision not to complete the deal which, it
contends, it was entitled to do pursuant to section 12(a)(ii) of the contract. In this letter, it
affirmed that the $25,000 escrow payment should be paid to Chain-C. As is evident,
Chain-C did not agree with this interpretation, and filed suit seeking specific performance
of the deal and damages. Both sides filed motions for summary judgment, and, as we
noted above, the trial court granted Seaboard's motion.

Relevant contractual provisions

 1. CONSIDERATION: The parties agree that the total purchase price for the
property shall be Nine Hundred Sixty Thousand Dollars ($960,000.00) for approximately
1,280 acres (the "Purchase Price").

 Upon execution of this Agreement, Buyer shall deposit with the Escrow Agent the
sum of Twenty Five Thousand and 00/100 dollars ($25,000.00) (the "Escrow Payment").
If this agreement is not terminated pursuant to Section 12a hereto and the Agreement has
not closed 150 days from the Effective Date of this Agreement, the Escrow Agent shall be
instructed by Buyer to pay all (100%) of the Escrow Payment to the Seller as consideration
for an option to close on the purchase of the Property no later than November 1, 2003 (the
"Option Payment"). If the Option Payment is disbursed to Seller and this Agreement is not
terminated by Buyer pursuant to Section 12, then the Purchase Price due at closing shall
be reduced by the Option Payment.

12. CANCELLATION AND BREACH:

a. Cancellation of this Agreement: This Agreement shall be terminated upon the
occurrence of any of the following:

i. If Buyer has not notified Seller in writing within twenty (20) calendar days after the
Investigation Period [130 days after the execution of the contract] expires that all the
conditions in Section 2 hereof have been satisfied or Buyer has waived such conditions;

ii. If following twenty (20) calender days after the Investigation Period [130 days after the
execution of the contract] expires, Buyer at anytime notifies Seller in writing of its
termination of the Agreement; or

iii. If Buyer gives written notice of termination to Seller on account of Seller's failure to
observe any material obligation of this Agreement.

b. Effect of Cancellation or Breach: If this Agreement terminates, Seller's deed and
Power of Attorney shall be returned to Seller and:

i. If this Agreement is terminated pursuant to Section 12 a i then no party shall have any
liability to the other party hereunder, this Agreement shall terminate, and Escrow Agent
shall return the Escrow Payment to Buyer and neither Seller or Buyer shall have any further
obligation to the other hereunder.

ii. If terminated pursuant to Section 12 a ii, this Agreement shall terminate and the Option
Payment disbursed to Seller shall remain the property of the Seller and neither Seller nor
Buyer shall have any further obligation to the other hereunder.

iii. If terminated pursuant to Section 12 a iii, Buyer may terminate this Agreement and shall
have such rights and remedies as shall be allowed by law and in equity.

iv. In the event of any litigation arising out of this Agreement, the prevailing parties shall
be entitled to recover its costs and reasonable attorney's fees.

As we have noted, the trial court granted Seaboard's summary judgment and denied
Chain-C's motion. Hence, this appeal.

Standard of Review

 The standards by which orders granting summary judgment are reviewed are, by
now, axiomatic and we refer the parties to the seminal decision of Nixon v. Mr. Property
Management Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1997). Those standards require that
the movant for summary judgment has the burden of showing that there is no genuine
issue of material fact and it is entitled to judgment as a matter of law, that in deciding
whether there is a disputed material fact issue evidence favorable to the non-movant will
be taken as true and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. Id. 

 Although their implementation is sometimes difficult, the rules governing the
construction of a contract are well established. Where, as here, neither party contends the
contract is ambiguous, its construction must be resolved as a matter of law. Borders v.
KRLB, Inc., 727 S.W.2d 357, 359 (Tex. App.-Amarillo 1987, writ ref'd n.r.e.). Our primary
concern is to ascertain the true intent of the parties as expressed in the contract. Id. To
achieve that objective, we must examine and consider the entire writing in an effort to
harmonize and give effect to all the provisions of the contract. Questa Energy Corp. v.
Vantage Point Energy, Inc., 887 S.W.2d 217, 221 (Tex. App.-Amarillo 1994, writ denied). 
In conducting our examination, we accord the words used in the contract their plain,
ordinary, and generally accepted meaning, unless the instrument provides otherwise. Sun
Operating, Ltd. v. Holt, 984 S.W.2d 277, 285 (Tex. App.-Amarillo 1998, pet. denied);
Phillips Petroleum Co. v. Gillman, 593 S.W.2d 152, 154 (Tex. Civ. App.-Amarillo 1980, writ
ref'd n.r.e.). 

 In applying the foregoing rules we may not rewrite the contract to mean something
it did not mean. Borders, 727 S.W.2d at 359. The parties to a contract are considered as
masters of their own choices and are entitled to select what terms and provisions to include
in a contract, and they are entitled to rely upon the words selected to demarcate their
respective obligations and rights. In sum, the parties strike the deal they choose to strike,
and, in doing so, they are bound by the agreement as written. Emmer v. Phillips Petroleum
Co., 668 S.W.2d 487, 490 (Tex. App.-Amarillo 1984, no writ). 

Analysis

 Chain-C argues that the contract at issue was "both an option contract and a
contract for sale of land." Specifically, it reasons that the option contained in the contract
was for an extension of time within which to close the deal, the $25,000 was a separate
payment for the extension of time within which to close the deal to no later than November
1, 2003, and Seaboard as the Buyer, "no longer had an unbridled right to terminate the
contract 'at any time' but could do so only prior to the closing date which it specified." 
(Emphasis in original). It concludes that because it satisfied all conditions of the contract
and was ready, willing, and able to conclude the contract on or before November 1, 2003,
and Seaboard had not exercised its section 12(a)(ii) right to terminate by that time,
Seaboard had materially breached the contract and the trial court erred in concluding
otherwise.

 The primary test for determining whether a real estate agreement is an option
contract or a sale contract is whether the contract imposes a mandatory obligation upon
the seller to accept a sum stipulated as liquidated damages in lieu of the purchaser's
further liability. Cadle Co. v. Harvey, 46 S.W.3d 282, 286 (Tex. App.-Fort Worth 2001, pet.
denied); Gala Homes, Inc. v. Fritz, 393 S.W.2d 409, 411 (Tex. Civ. App.-Waco 1965, writ
ref'd n.r.e.); see also Seelbach v. Clubb, 7 S.W.3d 749, 756 (Tex. App.-Texarkana 1999,
pet. denied) (when seller's only contractual remedy is retention of the earnest money, the
agreement is an option). In the absence of such a provision, it is a sale contract. Cadle
Co., 46 S.W.3d at 286; cf. Paramount Fire Ins. Co. v. Aetna Casualty & Surety Co.,163
Tex. 250, 353 S.W.2d 841, 843 (1962). 

 Under the instant contract, Seaboard was only obligated to instruct the escrow agent
to deliver the $25,000 in order to extend its option to purchase until November 1, 2003. 
As we have noted, paragraph 12(a)(ii) specifically provided that "at any time" after the
investigation period, Seaboard could notify Chain-C in writing of its termination of the
Agreement, which it did on November 26, 2003. 

 We do not agree with Chain-C that the references to potential closing dates in
Seaboard's September 15, 2003 letter were sufficient to obligate it to complete the
purchase unless it exercised its section 12(a)(ii) option prior to the closing date. The
rightholder's exercise of an option to purchase must be positive, unconditional, and
unequivocal. See Texas State Optical, Inc. v. Wiggins, Inc., 882 S.W.2d 8, 10-11 (Tex.
App.-Houston [1st Dist.] 1994, no writ). Nothing in that correspondence is sufficient to
modify or release the section 12(a)(ii) provision that Seaboard might terminate the contract
"at any time" was clear, explicit, and without limitation. To hold otherwise would be to
rewrite the contract, which we cannot do. 

 Chain-C also contends that because the trial court erred in entering summary
judgment in favor of Seaboard, it also erred in awarding Seaboard attorney fees. Our
holding that the trial court did not err in rendering its judgment obviates the necessity for
discussing that issue.

 In sum, Chain-C's issue is overruled and the judgment of the trial court is affirmed.


 John T. Boyd

 Senior Justice


1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2006).