RICHARD AND GLENDA HOLCOMB, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8402–75. Filed August 29, 1977.

*William R. Laughlin,* for the petitioners.
*Roy L. Allison,* for the respondent.

HALL, *Judge:* Respondent determined a $3,541.17 deficiency in petitioners' 1972 income tax. Another issue having been conceded by petitioners, the sole issue for decision is the amount of income petitioners received in 1972 under an installment sale of a land contract.

### FINDINGS OF FACT

Some of the facts are stipulated and are so found.

At the time they filed their petition, petitioners resided in Houston, Tex. Glenda Holcomb is a party solely by virtue of having filed a joint return with her husband, and we shall be referring only to Richard Holcomb when we refer to petitioner.

On May 12, 1972, petitioner entered into a written Earnest Money Contract (May contract) with J. Kelly Elliott, trustee, under which petitioner agreed to purchase from Elliott, and Elliott agreed to sell, a tract of approximately 2,440 acres of land in Kimble County, Tex. To bind the transaction, petitioner deposited earnest money of $10,000 with Blackburn Abstract Co., a title company acting as escrow agent.

The purchase price of the land was $366,090, which petitioner agreed to pay in the following manner: (1) $50,000 in cash, of which the $10,000 deposit by petitioner as earnest money would be a part; (2) by paying a preexisting installment promissory note having an unpaid balance of $254,329.90, to the lien of which the property was subject; and (3) by giving a promissory note for the remaining $61,760.10, at 6-percent interest, with payments on the principal due in 10 installments beginning in 1982, secured by a second lien on the property.

The May contract between petitioner and Elliott contained many provisions frequently found in contracts for the sale of land. For example, in the event Elliott could not furnish marketable title, petitioner was entitled to have his earnest money refunded, to seek specific performance, or to seek such other relief as may be provided by law. However, if Elliott were able to provide marketable title but petitioner failed to make the down payment and close the sale, the contract

provided that Elliott's sole remedy was to retain the earnest money as liquidated damages.

The May contract also provided for assignment of the contract by petitioner:

> *Assignment.* This contract and all rights and obligations of the Buyer hereunder may be assigned by the Buyer and any assignee of the Buyer without the consent of the Seller. Any assignee shall perform all of the obligations of the Buyer and shall execute and deliver all instruments that would otherwise have been executed and delivered by the Buyer. All acts which the Buyer may require to be performed hereunder may be required to be performed by any assignee.

The parties further agreed that the sale would be closed 120 days after the issuance of a title report on the property.

Several months later on September 8, 1972, petitioner executed a second instrument, captioned "Assignment of Earnest Money Contract" (September contract). In this instrument he assigned all of his rights and interests under the land contract to Hamlet I. Davis III and Eugene H. Branscome, Jr., and the assignees agreed to perform petitioner's obligations under that contract.

As consideration for the assignment, petitioner and the assignees agreed that in addition to performance of petitioner's obligations under the contract the assignees would pay petitioner a total of $38,242.50, composed of the following elements: (1) The assignees would pay petitioner $3,000 in cash "upon the closing of title to Assignee;"[1] (2) the assignees would deliver to petitioner, at the closing of the land sale, a promissory note for $35,242.50, bearing interest at 7 percent, with payments on principal beginning in 1982.

To bind their performance under the September contract, the assignees deposited $13,000 with petitioner. The parties agreed that, if the underlying land sale was consummated, the $10,000 of earnest money which petitioner had advanced under the land contract would become the property of the assignees:

> Assignee has deposited with Assignor the sum of $13,000.00 as earnest money to bind this assignment, the receipt of which is hereby confessed by Assignor. Upon the closing of the transaction and Assignee's performance

---

[1] The assignment contract provided that Hamlet I. Davis III and Eugene H. Branscome, Jr., would be referred to collectively as the "Assignee."

hereunder and under the said earnest money contract, Assignor agrees that the $10,000.00 on deposit with Blackburn Title [sic] Company, Junction, Texas, as earnest money under the said earnest money contract, shall become the property of Assignee, so that the net cash consideration payable to Assignor upon closing shall be the sum of $3,000.00 * * *

Petitioner and the assignees also agreed that, in the event Elliott should default, the assignees would have two remedies to choose between, namely:

a. Having the $13,000.00 earnest money herein receipted for returned to him, in which case he shall make a full reassignment of the earnest money contract; or

b. Seeking specific performance against the seller as provided for in the earnest money contract. Should the Assignee seek specific performance, he shall waive any right to thereafter seek a refund of the $13,000.00 earnest money and, if he acquires the seller's lands in any manner or makes any settlement in damages with regard to his lawsuit, he shall be liable to the Assignor for the balance of the total assignment consideration herein provided for.

On October 23, 1972, the sale of that Kimble County land was closed. At the closing, the assignees delivered a note to petitioner for $35,242.50. Neither Elliott nor petitioner refunded the checks which had earlier been deposited with them as earnest money. Three days later the title company paid Elliott the petitioner's $10,000 it had been holding in escrow.

In his 1972 individual income tax return, petitioner duly elected the installment method under section 453, and reported a $3,000 gain on the sale of the May contract. In his return, he reported no basis for the May contract, and therefore a profit percentage of 100 percent.[2] Respondent in his notice of deficiency determined that petitioner must recognize income of $9,302.80 in 1972, based on the following calculations:

| | | |
|---|---|---|
| Sales and contract price | | $48,242.50 |
| Less adjusted basis: | | |
| Earnest money | $10,000.00 | |
| Improvements and selling cost | 3,716.83 | 13,716.83 |
| Gross profit | | 34,525.67 |

[2] Petitioner and respondent now agree that $3,716.83, representing surveying costs, attorneys' fees and a cattle guard, is includable as basis in the May contract, thereby reducing the amount of income which petitioner alleges he is obligated to report in 1972 from $3,000 to $2,708.40.

| | |
|---|---|
| Gross profit percentage............................. | 71.56% |
| Collections this year................................. | $13,000.00 |
| Income recognized this year ................... | 9,302.80 |

### OPINION

On May 12, 1972, petitioner contracted to purchase 2,440 acres of land in Kimble County, Tex., for $366,090, depositing $10,000 of earnest money in a purchase escrow. On September 8, 1972, petitioner assigned his rights under the May contract to Davis and Branscome, who agreed to perform petitioner's obligations and to pay petitioner $38,242.50 for his rights under the contract. Of this amount, $3,000 was to be paid in cash, and the remaining $35,242.50 was to be represented by an installment note. Davis and Branscome concurrently deposited with petitioner $13,000 to bind the September contract. Three thousand dollars of this represented the cash down payment under the September contract; $10,000 restored to petitioner his $10,000 down payment under the May contract, the right to which was to be assigned to the assignees at the close. The sale closed as agreed in 1972.

On his 1972 return, petitioner reported his gain on the September contract on the installment basis under section 453(b).[3] No issue is raised regarding the effectiveness of the installment election. However, respondent contests petitioner's computation under section 453. The question raised depends upon the treatment of the $13,000 which Davis and Branscome deposited with petitioner, and specifically upon the $10,000 portion thereof in excess of the $3,000 (which the parties agree was part of the consideration for the assignment). Petitioner's position is that this $10,000 simply represents restoration of petitioner's down payment on the May contract. As part of the September contract, this $10,000 was to be deposited with petitioner by Davis and Branscome, and on the closing petitioner would keep Davis' and Branscome's $10,000, while Davis and Branscome would in return be credited with petitioner's $10,000 down payment as part of their purchase price for the land. Respondent's position is

---

[3] All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.

that the May contract was an option under Texas law and the $10,000 paid to seller was the option price and part of petitioner's basis in the option. We agree with respondent.

The following may assist comprehension of the parties' positions:

|  | Petitioner's version | Respondent's version |
| --- | --- | --- |
| Total contract price | $38,242.50 | $48,242.50 |
| Adjusted basis in May contract | 3,716.83 | 13,716.83 |
| Gross profit | 34,525.67 | 34,525.67 |
| Gross profit percentage | 90.28% | 71.56% |
| 1972 collections | $3,000.00 | $13,000.00 |
| 1972 reportable income | 2,708.40 | 9,302.80 |
|  | (90.28% x $3,000) | (71.56% x $13,000) |

Under the May contract, in the event the seller fails to furnish marketable title, petitioner could have his $10,000 refunded or seek specific performance or such other relief as the law provided. However, if the seller provided marketable title but petitioner failed to close the sale, the contract provided that the seller's sole remedy was to retain the $10,000 as liquidated damages. The seller was not entitled to specific performance.

Under Texas law when the seller has the mandatory obligation to accept a stipulated sum as liquidated damages in lieu of the purchaser's further liability, thereby relieving the purchaser of the obligation to pay the purchase price, the agreement is not an absolute agreement of sale and purchase but rather an option to purchase. *Tabor v. Ragle,* 526 S.W.2d 670, 675 (Tex. Civ. App. 1975); *Gala Homes, Inc. v. Fritz,* 393 S.W.2d 409, 411 (Tex. Civ. App. 1965); *Texlouana Producing & Refining Co. v. Wall,* 257 S.W. 875, 878 (Tex. Comm'n App. 1924); *Moss & Raley v. Wren,* 102 Tex. 567, 120 S.W. 847 (1909); 58 Tex. Juris.2d *Vendor and Purchaser,* sec. 58 (1964); see Annot., 87 A.L.R. 563 (1933); Annot., 3 A.L.R. 576 (1919).

Petitioner had 120 days after issue of the title report to close the May transaction. The May contract provided that the rights under the agreement were assignable.

On September 8, 1972, petitioner assigned his rights under the May contract. By this date petitioner had incurred $3,716.83 in expenses in connection with the May contract (for surveying, attorneys' fees, and cattle guard) and had paid

$10,000 into the escrow for the option. These two amounts, or $13,716.83, represent petitioner's basis in the assigned contract. To bind their performance under the September contract, Davis and Branscome paid petitioner directly (not into the escrow) $13,000. Petitioner was entitled to keep the $13,000 unless the seller of the realty defaulted and the assignees elected to have their $13,000 refunded and reassign the September contract to petitioner, rather than seek specific performance against the seller. If the sale closed, upon transfer of title to Davis and Branscome, they were entitled to be credited with petitioner's $10,000 down payment as their part payment on the land. The sale closed within the time specified. At the closing petitioner received a third lien promissory note for $35,242.50. This note plus the previously received $13,000 constituted the total consideration received by petitioner for the assignment. We recognize that the September agreement states that the consideration for the assignment is $38,242.50, treating the $10,000 additional amount as a wash. If the May agreement were a contract of purchase and sale rather than an option, a good argument could be made that the petitioner's $10,000 paid into escrow was paid on the land, not on the contract. But in the case of an option, and we clearly here have an option under Texas law, the $10,000 payment was the cost of the option. As a result the $10,000 swells the petitioner's adjusted basis in the contract and the total contract price, producing recognition of income in the first year of $9,302.80.

Because of the concessions by the parties,

*Decision will be entered under Rule 155.*