Clyde TABOR, Appellant,

v.

Gerald Thomas RAGLE, d/b/a E & R Enterprise, Appellee.

No. 17640.

Court of Civil Appeals of Texas, Fort Worth.

July 25, 1975.

Rehearing Denied Sept. 12, 1975.

Garrett, Burkett & Bodoin, and Robert R. Bodoin, Fort Worth, for appellant.

King & Massey, Inc., and Marion L. Massey, Fort Worth, for appellee.

## OPINION

BREWSTER, Justice.

The trial court in a non-jury trial rendered judgment decreeing that plaintiff, Gerald Thomas Ragle, d/b/a E & R Enterprise, recover from the defendant, Clyde Tabor, the sum of $6,800.00 and this appeal is brought by Tabor from that decree.

The parties to the suit had signed the following written agreement on or about September 20, 1972:

C-110—STANDARD SALE CONTRACT

## THE STATE OF TEXAS,

COUNTY OF TARRANT

### BY THIS AGREEMENT AND CONTRACT,

Clyde Tabor           hereinafter called Seller,

**Parties**

~~acting through the undersigned and duly authorized Agent~~ hereby sells and agrees to convey unto
E & R Enterprise, a partnership composed of Gerald Ragle and Dave Elam,
         , hereinafter called Purchaser,
the following described property: Lying and situated in   Tarrant County, Texas, and
described/a^s four-acre tract of land out of the southwest corner of a six-
acre tract of land out of the southwest corner of a 73.637 acre tract of land
out of the W. J. Holland Survey, Abstract No. 692, and the Samuel Needham
Survey, Abstract No. 1171, and bounded by Wall-Price Road on the south and
U. S. Highway #377 on the west;

**Properties**

the purchase price is $ 50,000.00     , payable as follows:

$ 5,000.00      Cash (of which Purchaser has deposited with the ~~undersigned Agent~~ Seller,

          as part payment, receipt of which is hereby acknowledged by said ~~Agent by~~ Seller;
the balance of $45,000.00 to be paid by purchaser by the execution of a
vendor's lien note for $45,000.00 payable to the order of the Seller herein
in monthly installments of $545.99 each for a period of ten years and bearing
interest at the rate of 8% per annum, said monthly installments of $545.99 to
include principal and interest.

**Terms**

It is further understood and agreed that the purchaser agrees to pay to the
Seller herein interest on the $45,000.00 balance of the sales price from date
hereof to closing date at the rate of 8% per annum, payable semi-annually.
The final closing of this transaction shall occur one year from date hereof.

The said executed note       to be secured by Vendor's Lien and Deed of Trust with power of sale and

with the usual covenants as to taxes, insurance, and default.

Seller agrees to furnish Title Policy through FORT WORTH TITLE COMPANY to said property,
which shall be conveyed free and clear of any and all encumbrances except those named herein.

In accordance with the terms of the Real Estate License Act of the State of Texas, you, as pur-
chaser, are advised that you should have the abstract covering the real estate which is the subject of this
contract examined by an attorney of your own selection, or that you should be furnished with or obtain a
policy of title insurance.

If abstract is furnished, Purchaser agrees within ten day from the receipt of said abstract
either to accept the title as shown by said abstract or to return it to the undersigned Agent with the
written objections to the title. If the abstract is not returned to the Agent with the written objections
noted within the time specified, it shall be construed as an acceptance of said title. If title policy is fur-
nished, Purchaser agrees to consummate the sale within ten days from date title company approves title.

If any title objections are made, then the Seller or his Agent shall have a reasonable time to cure
said objections and show good and marketable title. In the event of failure to furnish good and marketable
title, the purchase money hereby receipted for is to be returned to Purchaser upon the cancellation
and return of this contract, or Purchaser may enforce specific performance of same.

**Title**

Seller agrees when the title objections have been cured, to deliver a good and sufficient General
Warranty Deed properly conveying said property to said Purchaser, and Purchaser agrees, when said
deed is presented, to pay the balance of the cash payment and execute the note     and Deed of Trust
herein provided for. Should the Purchaser fail to consummate this contract as specified for any reason,
except title defects, Seller shall have the right to retain said cash deposits as liquidated damages for the

**Closing**

breach of this contract, ~~and shall pay to Agent therefrom the sum of $~~ ------------- ~~or Seller may~~
~~enforce specific performance of this contract.~~

Taxes for the ~~current year, the current rents, insurance, and interest, (if any),~~ are to be prorated
to date of closing.

**Taxes**

~~Seller agrees to pay the undersigned duly authorized agent a commission of $~~ --
~~in cash for negotiating this sale.~~

Seller and Purchaser both warrant and represent that there are no brokerage
fees or real estate commissions owing to any real estate agent or anyone, and
hereby agree to indemnify and hold the other party harmless from any such claims,
if any.

**Special Conditions**

OK #1 11-7-74
do

Executed in triplicate this   20th   day of   September,      19 72.

This contract subject to the acceptance of Seller
Accepted:

_____
Clyde Tabor,        Seller.

_____
~~Purchaser~~

Rh -

E & R ENTERPRISE

By _____
~~Agent for~~     Partners        Purchaser

On March 1, 1973, William David Elam assigned his interest in the contract to his former partner, Gerald Ragle, the plaintiff.

When the contract was executed on September 20, 1972, the buyers therein, Ragle and Elam, paid to the seller, Tabor, the $5,000.00 down payment therein provided for, and six months later they paid Tabor the semi-annual interest payment therein provided for totalling $1,800.00.

The contract obligated the parties to the contract to close the deal one year later, on September 20, 1973. Tabor (seller) went to the title company offices where the deal was to be closed prior to closing date and executed the necessary closing papers including the deed and left them with his representative at the title company. On about the same date Ragle (buyer) went to the title company office and signed and left with the same person at the title company the note and deed of trust provided for in the contract and he also delivered to the title company a check for $1,885.52 for the interest due under the contract plus closing costs. The check was drawn on a Weatherford bank and there were insufficient funds in the account at the time it was executed to pay the check. The buyer testified that he had made arrangements with the president of the Weatherford bank to clear the check when it was presented for payment. The check was mailed to the bank and the bank still would not pay it because the funds in the account on which it was drawn were insufficient to cover the check.

The seller, Tabor, had the title company keep trying to collect the check until September 28, 1973, at which time he had Mrs. Viva Puckett at the title company, who was handling the deal for the seller, write a letter to the buyer, Ragle, advising him that the contract was being forfeited by the seller because the Weatherford bank on which buyer's check was drawn advised the title company that the account on which buyer's check was drawn did not have enough funds in it to cover the check.

On closing date of September 20, 1973, buyer's account was overdrawn by $6,200.57.

Later on October 17, 1973, the buyer, Ragle, came to the title company office and presented Viva Puckett with a cashier's check for the amount of $1,885.52, the amount due on the contract as of September 20, 1973. Mrs. Puckett took the check but told Ragle she could not go ahead and close the deal out unless he could work something out with Mr. Tabor. Tabor refused to accept this check and to go through with the deal. The seller and his agents have never tendered a deed to the buyer. Ragle requested the deed when he delivered this cashier's check, but seller refused to deliver it.

In his trial pleading Ragle (the buyer) alleged that the contract involved was unenforceable because it did not comply with the statute of frauds in that the property description as contained therein was insufficient. He prayed for judgment for the recovery of the $6,800.00 consideration that he had paid under the contract to Tabor.

In the seller's trial pleading he also alleged that the contract did not satisfy the requirements of the Statute of Frauds (Art. 3995, V.A.T.S.) and asked that plaintiff be denied a recovery in the case.

The trial court concluded that the contract that is the basis of the suit is unenforceable under the statute of frauds because of an inadequate property description.

No one questions that ruling on this appeal.

From the record before us it is apparent that the trial court reached a decision in this case by the following reasoning: the contract forming the basis of this suit was a real estate sales contract; since it did not so specify, the times specified therein for performance were not of the essence; the question of whether the buyer paid the $1,885.52 within a reasonable time of the date set for closing was a fact question to be determined by the trial court; that since the trial court decided that issue in the

buyer's favor, the buyer is not in default of the contract; the seller has never tendered a deed and has refused to perform; as early as September 23, 1973, the seller advised the buyer that the contract was forfeited; and under those facts the trial court has reasoned that the buyer is entitled to recover the amount of the purchase price of the land that he has paid to the seller.

We affirm.

For convenience, we will hereinafter refer to appellant Tabor as seller, and to appellee Ragle as buyer.

Seller's first point of error is that the trial court erred in holding that time was not of the essence in performing the contract in that the contract involved is clearly an option contract in which contracts time for performance is of the essence.

We overrule this point of error.

█ In an ordinary contract for the conveyance of real estate, in which the purchase money is to be paid at a later day, time is not of the essence unless the contract clearly so states, or the intent that it shall be clearly appears from the terms of the contract. But if the contract involved is an option contract, giving a party an option to acquire a right by doing a certain thing within a specified time, then time is essential and in order to secure the right the party must comply within the specified period. *Johnson v. Portwood*, 89 Tex. 235, 34 S.W. 596 (1896); *Gala Homes, Inc. v. Fritz*, 393 S.W.2d 409 (Waco Tex.Civ.App., 1965, ref., n. r. e.); and *Smith v. Warth*, 483 S.W.2d 834 (Waco Tex.Civ.App., 1972, no writ hist.).

The seller's contention is that the contract involved in this case was an option contract, as distinguished from a contract to convey realty, and that because it was an option contract, the trial court erred in holding that the time specified therein for buyer to pay his money was not of the essence.

In drawing the contract in this case one of the Texas Standard Sale Contract forms was used. One sentence of the contract read: "Should the Purchaser fail to consummate this contract as specified for any reason, except title defects, Seller shall have the right to retain said cash deposits as liquidated damages for the breach of this contract." In the printed form used the sentence just referred to also contained the following language: "And shall pay to Agent therefrom the sum of $ or Seller may enforce specific performance of this contract." Before the contract was signed by the parties someone had taken a typewriter and, using the hyphen mark, had marked through the last part of the sentence that is last quoted above.

The seller's contention is that when the part of the sentence just referred to, providing that seller can get specific performance of the contract, was xed through that the legal effect of the deletion was to change the contract from one to convey real estate into an option contract.

█ The test for determining whether the contract involved here is an option contract or is one for the sale of real estate is set out in *Gala Homes, Inc. v. Fritz*, supra, as follows: "Whether the seller has the mandatory obligation to accept the sum stipulated to be liquidated damages in lieu of the purchaser's further liability, thereby relieving the purchaser of obligation to pay the purchase price, is the established test in Texas for determining the nature of the contract as constituting, or not, an absolute agreement of sale and purchase."

In *Paramount Fire Ins. Co. v. Aetna Casualty & Surety Co.*, 163 Tex. 250, 353 S.W.2d 841 (1962), the court held that whether there is a provision in the contract that the seller *must* accept the stipulated fund "in full settlement of the buyer's liabilities for default" is the determining factor and that in the absence of such a provision the nature of a contract as one of sale is not altered.

█ In Texas the general rule is that if one party to a contract for the sale of real

estate breaches it, the other party, be he the seller or the buyer, can enforce specific performance. 59 Tex.Jur.2d, "Vendor and Purchaser," § 510, p. 57.

In the case before us, after the deletion above referred to, the rest of the contract is silent as to whether or not the seller had the right of specific performance in the event of a breach by the buyer. The contract involved contains no provision that the vendor *must* accept the liquidated damages sum in full settlement of the buyer's liability for default.

On applying the tests laid down in the *Paramount Fire Ins. Co.* case and the *Gala Homes, Inc.*, case, both supra, we can reach no conclusion except that the contract involved here was a contract for the sale of real estate. The contract involved here did not contain a provision requiring that the vendor must accept the liquidated damages sum in full settlement of the buyer's liability for default.

In the event of a breach a party to a contract can pursue any remedy which the law affords in addition to the remedy provided in the contract, unless the contract declares the remedy to be exclusive. *Jensen v. Sire*, 137 Mont. 391, 352 P.2d 263, 84 A.L.R.2d 317 (1960).

Some jurisdictions in determining the remedies available to contracting parties in the event of a breach apply the following rule: the mere fact that a contract provides a particular remedy does not necessarily mean that such remedy is exclusive of others afforded by law, but rather that the question of exclusiveness turns upon the intention of the parties as revealed by the language of the contract as a whole, the specific provisions relating to the remedy, and all the facts of a particular case, such as the background of the contract when executed, the conduct of the parties, and the nature of the subject matter involved. See 84 A.L.R.2d 324, "Contractual Remedy—Exclusiveness," and cases there cited.

The contract involved in this case did not provide that seller did not have the remedy of specific performance.

The testimony in this case showed that the seller requested the title company employees to draw up the contract involved. The trial court found that the seller did not instruct anyone to delete from the contract the proviso giving him the right of specific performance; that the seller did not know that the proviso had been deleted; and that the buyer did not know it had been deleted. The evidence in the case supported these findings.

If it can be said that the rule last referred to above is the law in Texas, we reach the same announced result that we reached by applying the tests laid down in the *Paramount Fire Ins. Co.* and *Gala Homes, Inc.* cases, supra.

The trial court by necessary implication found that the parties to the contract did not intend that the particular remedy provided for in the contract for vendor, in the event of a breach by vendee, be vendor's exclusive remedy for such breach. Rule 299, T.R.C.P.

The fact that someone, without explanation in the evidence, and without the knowledge or request of any party, had hyphened out the proviso giving seller the remedy of specific performance, was a fact to be considered by the trial court, along with the other pertinent evidence in the case on the issue of the intention of the parties.

The evidence was sufficient to support the trial court's implied finding that the parties intended that the contract provision relating to liquidated damages not be the vendor's exclusive remedy for a breach of the contract by vendee.

We hold that the contract involved was a contract to convey realty, as distinguished from an option contract. Because of this the times therein specified for the payment by the buyer of his money were not of the essence. The trial court's ruling so holding, that is complained of in seller's first point of error, was therefore correct.

Seller's second point of error is that the trial court erred in holding that Ragle's payment of the $1,885.52 was within a reasonable time of the date contracted for closing. We overrule the point.

The contention therein made is actually that the evidence in the case was insufficient to support the trial court's finding to the effect that the payment was made within a reasonable time.

In the case of *Ridglea Interests, Inc. v. General Lumber Company*, 343 S.W.2d 490 (Fort Worth Tex.Civ.App., 1961, ref., n. r. e.) the Court held that "reasonable time" is a relative term. Its meaning differs according to the circumstances of each particular case.

In this case the buyer testified that the bank president had told him that he would pay the check when it reached the bank through normal banking channels. The buyer knew that the seller's representative had never deposited the check prior to September 28, 1973, for collection through normal banking channels. Then on September 28, 1973, the seller, through his agent, advised the buyer that the contract was forfeited. Since that time the seller has refused to go through with the contract and he has never tendered back to the buyer the sums that the buyer paid him under the contract and now refuses to return that money. On the other hand, the buyer, even after the alleged forfeiture of the contract by the seller, offered to comply with the contract.

We hold that under the facts of this case there was sufficient evidence to support the trial court's finding that is complained of in seller's second point of error.

The substance of seller's third point of error is that the trial court erred in holding that he could not keep the money that buyer had paid him under the contract.

We overrule the point.

The controlling rule is stated in *Campbell v. Fair*, 82 S.W.2d 1038 (Texarkana Tex.Civ.App., 1935, no writ hist.), as follows: "The universal rule seems to be that a vendee may not recover of a vendor money paid as a part of the consideration for land purchased under a contract which is within the statute of frauds, unless he shows a tender of compliance on his part with the contract and a refusal of compliance on the part of the vendor."

To the same effect is the holding in *Cammack v. Prather*, 74 S.W. 354 (Tex.Civ.App., 1903, no writ hist.).

All of the elements of the buyer's cause of action that is here sued on, as they are shown to be in the two cases just cited, are present in this case.

Under the findings of fact, as made by the trial court, the buyer did not breach the contract, and has tendered performance, and the seller has refused to comply with the contract.

Under those circumstances the judgment for the buyer was correct.

Another case that supports our holding is *MacLane v. Smith*, 198 S.W.2d 493 (Fort Worth Tex.Civ.App., 1946, no writ hist.).

The judgment is affirmed.