# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00399-CV

### Zahir Walji and Airport Center Dev., Ltd., Appellants

### v.

### Met Center NYCTEX, Ltd., Appellee

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. 99-03750, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**

Appellants Zahir Walji and Airport Center Dev., Ltd. (together AWalji@)[1] appeal the district

court=s final judgment that they take nothing by their breach-of-contract action against appellee Met Center

NYCTEX, Ltd. (AMet Center@).  We will affirm the judgment.

## BACKGROUND

The stipulated facts reveal that the parties= dispute arises from a failed attempt by Walji to

purchase property from Met Center for the purpose of constructing a hotel near the Austin-Bergstrom

---

[1] Airport Center Dev., Ltd. was not a party to the contract at issue in this cause but was a plaintiff in the district court and is an appellant here.  The original petition in the district court describes Airport Center as Aa Texas limited partnership@ and asserts that it and Walji Aboth contributed moneys toward the ×deposit= with the expectation that the Contract would be assigned from Mr. Zahir Walji to Airport Center Dev., Ltd.@ Because the interests of appellants do not appear to diverge, and the district-court judgment was adverse to both, we will refer to them simply as AWalji.@

International Airport. On February 26, 1997, Met Center entered into a contract for sale with KML, Inc., an entity owned and controlled by Walji, whereby Met Center would sell KML approximately five to six acres of land out of a larger tract owned and under development by Met Center (the AKML Contract@). The KML Contract provided that, in the event of a default by KML, Met Center could enforce the contract by specific performance. In June the KML Contract was amended. On October 31, KML assigned its interest in the contract to Walji. On December 17, Met Center and Walji again amended the KML Contract to, *inter alia*, eliminate Met Center=s right to specific performance as a remedy in the event of default by Walji. Other agreed modifications and amendments followed. The final result was a new contract, signed by Walji and Met Center on April 3, 1998, from which this action arises (the AContract@).

Pursuant to the Contract, Walji delivered a Adeposit@ in the amount of $117,612 to Met Center. Walji also agreed to Areimburse [Met Center] for 39.3% of all engineering and other professional fees incurred by [Met Center] in preparing the >Concept Plan,=@ defined by the Contract as Aa conceptual land plan,@ describing the locations and proposed locations of improvements to Met Center=s overall development (of which the land to be purchased by Walji was a part), including utilities, drainage facilities, building sites, roads, driveways, parking areas, and landscaping. The Contract required Walji to pay Met Center Awithin ten (10) days after [Met Center]=s delivery of a notice for reimbursement, which notice shall include an itemization of such costs, together with invoices, statements or other evidence of the costs so incurred by [Met Center].@ On April 9, Walji received a letter from Met Center requesting reimbursement in the amount of $1002.64. The parties agree that the contractual ten-day response period expired April 20 and, as of that date, Met Center had not received the reimbursement. Met Center=s president testified that

2

on April 22 he received, by regular mail, an envelope from Walji postmarked April 21. He returned the envelope to Walji unopened. In a brief to this Court, Walji states that late in the afternoon of April 20 he mailed Met Center a check for $1002.64 and concedes that his mailing was not postmarked until April 21 and not received by Met Center until April 22.

Paragraph 12(a)(ii) of the Contract provides:

> In the event [Walji] fails to . . . reimburse [Met Center] for such costs after written notice is received and the 10-day period of time for such reimbursement expires, [Met Center] may by notice to [Walji] given at any time prior to receipt of such reimbursement, terminate this Contract, in which event the Deposit shall be retained by [Met Center] and neither party shall have any further rights, duties or obligations hereunder, except those that expressly survive the termination hereof.

When Met Center did not receive the requested reimbursement on April 20, on April 21 it notified Walji that it was terminating the Contract and retaining the deposit and advised Walji that Aneither party shall have any further rights, duties or obligations under the Contract.@ Met Center=s notice invoked the provisions of paragraph 12(a)(ii).

Walji brought this declaratory-judgment action, seeking a declaration that paragraph 12(a)(ii) of the Contract is either void or an unenforceable penalty and requesting a refund of the deposit. The parties filed cross-motions for partial summary judgment. The district court granted Met Center=s motion and denied Walji=s. The court later rendered a take-nothing final judgment against Walji and awarded Met Center its costs and attorney=s fees.

Walji brings this appeal by four issues, claiming (1) paragraph 12(a)(ii) of the Contract is an unenforceable penalty provision; (2) the Contract is not an option contract because it does not mandate that

3

the seller accept the buyer=s deposit as its only remedy in the event of default by the buyer; (3) if the Contract is an option contract, Walji=s failure to strictly comply with the reimbursement deadline did not constitute a rejection of the option because it was not a Aterm or condition@ to exercising the option; and (4) if the Contract is an option contract and the reimbursement agreement is a Aterm or condition@ to exercising the option, Walji=s failure to strictly comply should be excused pursuant to the doctrine of Ainequitable forfeiture.@

## STANDARD OF REVIEW

Walji=s issues were decided by the district court on the parties= competing motions for partial summary judgment. A movant in a summary-judgment proceeding has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). In deciding whether a disputed material fact issue exists, we accept as true evidence favorable to the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). We indulge every reasonable inference and resolve any doubts in the nonmovant=s favor. *Id.* at 549. When the parties file competing motions for summary judgment and one is granted and the other denied, the reviewing court should review the summary-judgment evidence presented by both sides and determine all questions presented. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).

## DISCUSSION

4

By his second issue, Walji contends that the Contract is a bilateral contract for sale and not an option contract because the Contract does not mandate that Met Center keep the deposit as its sole remedy in the event of default by Walji. AIn a bilateral contract both parties are promisors and both parties are promisees. The legal effect of such a contract is that there are mutual rights and mutual duties.@ 1 Joseph M. Perillo, *Corbin on Contracts* ' 1.23 (rev. ed. 1993). A promise or obligation that is left within the promisor=s discretion to perform, not perform, or terminate at will is considered illusory and will not support a bilateral contract. *See Light v. Centel Cellular Co.*, 883 S.W.2d 642, 644-45 (Tex. 1994). An option contract, on the other hand, is designed to allow the optionee to purchase, with earnest money, the discretion that a bilateral contract lacks. We agree that in order for an option contract to exist, the forfeiture of earnest money must be the sole remedy upon default. *See Gala Homes, Inc. v. Fritz*, 393 S.W.2d 409, 411 (Tex. Civ. App.CWaco 1965, writ ref=d n.r.e.) (holding that established test in Texas for determining nature of contract is whether seller has mandatory obligation to accept liquidated damages in lieu of buyer=s further liability). However, we hold that the Contract satisfies this requirement.

An option contract Agives the optionee the right to elect to purchase the property at stated terms within a specified period of time, but with no obligation to do so.@ *Rollingwood Trust No. 10 v. Schuhmann*, 984 S.W.2d 312, 315 (Tex. App.CAustin 1998, no pet.). In other words, a holder of an option who decides not to consummate a transaction may walk away from the contract, and the seller has no recourse except to retain the money for the option. The original agreementCthe KML ContractCappears to have been a bilateral contract. Although Met Center originally had the right to demand specific performance, that remedy does not appear in the parties= final agreementCtheContract. In

determining the intent of the parties to a contract, the court is guided by the four corners of the contract, absent any allegations of ambiguity. *See National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520-21 (Tex. 1995). That the parties=intended for Met Center=s only remedy in the event of a Walji default to be retention of the deposit is clear not only from paragraph 12(a)(ii), but also from paragraph 16:

(a) In the event [Walji] shall fail to consummate this transaction in accordance with the provisions of this Contract for any reason (except the termination of this Contract in accordance with the provisions hereof), [Met Center] may, as [Met Center]=s sole and exclusive remedy, terminate this Contract by notice to [Walji], and retain the Deposit as liquidated damages, it being agreed that such sum is reasonable in view of the difficulty of ascertaining actual damages.

. . . .

(c) Except for the remedies for the breach of any obligations that survive the termination of this Contract or the Closing, the remedies provided in this paragraph . . . shall be the sole and exclusive remedies of the parties, and each party expressly waives any other rights and remedies to which they would otherwise be entitled.

Under Texas law, the crucial factor in determining if a contract for sale is an option contract is whether the seller must accept the stipulated sum in full settlement of the buyer=s liabilities for default. *See Paramount Fire Ins. Co. v. Aetna Cas. & Sur. Co.*, 353 S.W.2d 841, 843 (Tex. 1962) (holding that because seller retained right to specific performance, nature of contract as one for sale had not been altered); *Tabor v. Ragle*, 526 S.W.2d 670, 676 (Tex. Civ. App.CFort Worth 1975, writ ref=d n.r.e.) (holding that mere deletion of specific performance remedy did not transform contract into option because there was no provision specifying that liquidated damages would be exclusive remedy).

6

Walji argues that use of the word "may" in paragraph 16(c) makes the retention of the deposit discretionary rather than mandatory and therefore not within the definition of an option contract as articulated in *Gala Homes*. *See* 393 S.W.2d at 411. The cases cited by Walji in support of his argument involve contracts that do not contain language regarding the exclusivity of the remedy. In *Gala Homes,* the contract provided that the seller "shall be entitled to retain" the down payment as liquidated damages. *Id*. at 410. The court held that the contract did not bind the seller to accept the sum in full satisfaction of the buyer=s liability. *Id*. at 411. In *Tabor v. Ragle,* the contract stated that the seller "shall have the right to retain said cash deposits as liquidated damages," but still gave the seller the right of specific performance. 526 S.W.2d at 675. By contrast, the Contract here provides that Met Center would retain the deposit as its "sole and exclusive remedy." The cases relied on by Met Center, although involving less complex contracts than the one at issue here, are more analogous. *See Baldwin v. New*, 736 S.W.2d 148 (Tex. App.CDallas 1987, writ denied); *Smith v. Hues*, 540 S.W.2d 485 (Tex. Civ. App.CHouston [14th Dist.] 1976, writ ref=d n.r.e.). In *Baldwin,* the court distinguished *Gala Homes* by focusing specifically on the contract wording, "shall have the right to have the [e]arnest [m]oney paid to Seller as liquidated damages for the breach of this [c]ontract, as Seller=s sole remedy." 736 S.W.2d at 150. The court held that this language made the contract an option instead of an offer to purchase. *Id*. In *Smith*, the contract provided that the "[s]eller=s sole remedy will be liquidated damages." *Smith*, 540 S.W.2d at 488. The court held that this language made the contract an option rather than an absolute agreement to purchase. *Id*. Similarly, the contract before us specifies that retention of the deposit is Met Center=s "sole and exclusive" remedy. The word "may" does not provide Met Center with an alternative remedy, but allows Met Center to decline

7

to exercise its right to terminate the Contract. But if it does terminate the Contract, Met Center=s exclusive remedy is to retain the deposit as liquidated damages. Therefore, we hold that the Contract is an option contract.

Walji further argues that the general remedy provisions of paragraph 16 do not apply to the specific breach-of-agreement remedy described in paragraph 12. He asserts that reimbursement for the concept plan was not something that had to take place before closing and, therefore, is excepted from paragraph 16 as an obligation that survives closing. We are not persuaded by this interpretation. The reimbursement obligation was included in a section entitled AConditions to Closing.@ Met Center clearly regarded default under this provision as a Adeal-breaker.@ The language in paragraph 12 concerning termination of the Contract for the specific default under the reimbursement provision mirrors the general-remedy language of paragraph 16. Having held that the Contract is an option contract, we also hold that the remedy provisions of paragraphs 12 and 16 are in harmony. Accordingly, Walji=s second issue is overruled.

By his third issue, Walji contends that even if this Court construes the Contract to be an option contract, the reimbursement provision was not a term or condition of the option. An option contract is the right to purchase, at the election of the buyer, certain described property Afor the price, and on the *terms and conditions* of the option contract.@ *Ferguson v. Von Seggern*, 434 S.W.2d 380, 385 (Tex. Civ. App.CDallas 1968, writ ref=d n.r.e.) (emphasis added) (citing Frank James, *The Law of Option Contracts* ' 101 (1916)). One commentator explains the distinction between Aterms@ and Aconditions@ in the following way:

8

> Lawyers use *condition* in several senses. Sometimes they use it to refer to the term in the agreement that makes the promise conditional. If the word is used in this sense, it can be said that promises, which impose duties, and conditions, which make duties conditional, are the main components of agreements. However, lawyers also use *condition* to refer to an operative fact rather than to a term. According to the Restatement Second a condition is Aan event, not certain to occur, which must occur, unless occurrence is excused, before performance under a contract becomes due.@

2 E. Allan Farnsworth, *Farnsworth on Contracts* ' 8.2 (2d ed. 2001). Thus, as illustrated by the Restatement, the actual language of paragraph 12(a)(ii) concerning reimbursement is a term of the contract; the event of Walji paying the reimbursement within ten days of notice is the condition. *See* Restatement (Second) of Contracts ' 224 cmt. a, illus. 1 (1981).

Acceptance of an option contract is achieved only through strict compliance with its terms. *See Texas State Optical, Inc. v. Wiggins*, 882 S.W.2d 8, 10-11 (Tex. App.CHouston [1st Dist.] 1994, no writ). Performance by less than strict compliance is generally considered to be a rejection of the option. *See Crown Constr. Co. v. Huddleston*, 961 S.W.2d 552, 558 (Tex. App.CSan Antonio 1997, no pet.); *White v. Miller*, 518 S.W.2d 383, 385 (Tex. Civ. App.CTyler 1974, writ dism=d). Met Center argues that Walji=s failure to reimburse it for the engineering expenses was such a rejection of the option contract. Termination of the Contract and retention of the deposit is the stated result of noncompliance with the terms of the Contract, terms that were agreed upon by Walji and Met Center. The Contract specifically *conditions* the continuation of the option on the timely reimbursement of the engineering fees. We hold that the reimbursement provision of the Contract was a condition of the contract, and that Walji, by not fulfilling the condition, rejected the option. Walji=s third issue is overruled.

By his first and fourth issues, Walji argues that the provision of the Contract allowing retention of the deposit is an unenforceable penalty clause and that the doctrine of inequitable forfeiture should apply. Because we hold that the Contract was an option, which Walji rejected by failing to strictly comply with its stated terms and conditions, we do not reach these issues. Neither argument applies to option contracts. *See B.F. Saul Real Estate Inv. Trust v. McGovern*, 683 S.W.2d 531, 534 (Tex. App.CEl Paso 1984, no writ) (holding that issue of unenforceable penalty only arises when there has been breach of contract and not when there is mere failure to exercise option); *Casa El Sol-Acapulco v. Fontenot*, 919 S.W.2d 709, 714 (Tex. App.CHouston [14th Dist.] 1996, writ dism=d by agr.) (holding that doctrine of inequitable forfeiture does not typically apply to option contracts because holder of option only loses power to exercise option).

## CONCLUSION

We affirm the judgment of the district court.

Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: July 26, 2002

Do Not Publish

10